IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NATIONAL OFFICE | ) ) ) ) | Case Number: 1:15-cv-00433 |
| | ) | Judge Dlott |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| The entity referring to itself as NAACP, CINCINNATI BRANCH, et al. | ) ) ) | |
| Defendants. | ) | |

**TEMPORARY RESTRAINING ORDER**

This matter comes before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2). Plaintiff filed a Verified Complaint (Doc. 1) and the Motion for Temporary Restraining Order on June 30, 2015. Plaintiff seeks to enjoin Defendants from (1) infringing upon the National Association for the Advancement of Colored People's ("NAACP") trademark, (2) holding themselves out as members and/or an authorized entity of the NAACP, (3) conducting any business in the name of the NAACP, (4) using, converting for use, dissipating, altering, and/or destroying property belonging to the NAACP and its authorized, unincorporated Cincinnati Branch, including but not limited to bank accounts, insurance policies, fluid funds, documentation, etc., and (5) ordering the immediate return of all property belonging to the NAACP and its authorized, unincorporated Cincinnati Branch. The Court held an initial telephone conference on June 30, 2015 with Plaintiff's counsel and counsel who entered a limited appearance for Defendants. At that time, all Parties agreed to a July 8, 2015 Preliminary Injunction hearing. The Court held an additional telephone conference on July 7, 2015, at which

1

time counsel, who had entered a limited appearance for Defendants, notified the Court that he would not be representing Defendants and could not verify service upon the Defendants for which he had entered his limited appearance. Plaintiff attempted service on Defendants by email to Defendants' last known email addresses and by certified mail service. Completion of service could not be verified at the time of the hearing. The Court held a hearing on Plaintiff's Motion for Temporary Restraining Order on Wednesday, July 8, 2015. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Temporary Restraining Order.

I.  BACKGROUND

Plaintiff, National Association for the Advancement of Colored People, is well known not just by its name, but also by its trademarked acronym, NAACP. There was testimony that the NAACP has persisted for years on its reputation and work as the preeminent civil rights organization in the United States. Plaintiff's use of the NAACP mark commenced in 1910. (Doc. 2-1, Exhibit 1).

Plaintiff has subordinate units across the country. Those units are subject to the general authority and jurisdiction of the NAACP Board of Directors. (Doc. 2-1, Exhibit 2 at 19). When members join the NAACP, they agree to be bound by the Constitution and Bylaws of the organization. Gill Ford, NAACP National Director of Unit Administration, testified that the Constitution and Bylaws provide a framework that all of its units must operate within. This framework serves to protect the NAACP's brand and reputation. This framework also exists to prevent units from taking action without the knowledge of the NAACP, which could leave the NAACP vulnerable to litigation and other liabilities.

Mr. Ford testified that the authorized, unincorporated Cincinnati Branch "NAACP, Cincinnati Branch" was chartered by the Board of Directors over sixty years ago. Mr. Ford

testified there are no other units authorized to operate as NAACP, Cincinnati Branch. As of December 19, 2014, the NAACP had determined its Cincinnati Branch to be inactive as a result of not having the necessary leadership to conduct business pursuant to the NAACP Bylaws. (Doc. 2-1, Exhibit 9). The NAACP notified the Branch of this determination. The Branch's past President, Defendant Ishton Morton, was suspended for violating the NAACP Bylaws on December 12, 2014. (Doc. 2-1, Exhibit 6). According to Mr. Ford's testimony, the NAACP, Cincinnati Branch secretary had resigned. Its First Vice President could not be located. Its Second Vice President, Lettie Reid, was suspended for violating the NAACP Bylaws on December 19, 2014. (Doc. 2-1, Exhibit 7). Defendant Beverly Morton was suspended for violating the NAACP Bylaws on January 27, 2015. (Doc. 2-1, Exhibit 8).

      Pursuant to the December 19, 2014 notice to the Branch, no business was to be conducted on behalf of the NAACP and/or its Cincinnati Branch until further guidance had been provided by the NAACP National Office. (Doc. 2-1, Exhibit 9). The December 19, 2014 notice also advised that absolutely no funds belonging to the Branch could be spent and no commitments to spend any funds could be made without the express written approval of Rev. Gill Ford. *Id.* Ishton Morton, Lettie Reid, and Beverly Morton were put on express notice in each of their suspension letters that they were to cease and desist from holding themselves out as officers and/or members of the NAACP.

      Mr. Ford testified that Defendant, the entity referring to itself as NAACP, Cincinnati Branch ("Cincinnati Incorporated"), instituted litigation against the NAACP in December of 2014.[1] Only after a hearing in that matter did the NAACP learn that Ishton Morton, Beverly

---

[1] A dispute regarding the NAACP, Cincinnati Branch 2014 officer elections is pending in Hamilton County Common Pleas Court, Case Number A1407241. (Doc. 2-1, Exhibit 5). The

3

Morton, and Lettie Reid had incorporated an entity in the name of the NAACP.[2] The NAACP has made several demands of Defendants to dissolve the entity incorporated using the NAACP's mark.[3] Defendants refuse to dissolve the entity referring to itself as NAACP, Cincinnati Branch. Mr. Ford testified that this is not the first time the NAACP has had to seek judicial intervention to protect its mark.[4] To further protect its mark, the NAACP Board of Directors at its February 21, 2015 Board of Directors Meeting, passed a Motion to "send a notice from the National Office to all units restating NAACP policy… that no unit has the authority to incorporate and/or use the name of the NAACP as a business entity… that any unit having any such entity shall immediately file appropriate documents with their Secretary of State Office dissolving any such incorporation within 14 business days." (Plaintiff's TRO Hearing Exhibit 1).

Testimony elicited from several witnesses established that despite the NAACP's notice and demand that Defendants cease and desist their infringing acts, Defendants have continued to use the NAACP mark. Defendants have also converted for their personal use property belonging to the NAACP's authorized Cincinnati Branch.

---

plaintiff in that case is the entity incorporated by the individual defendants here, using the NAACP's mark.

[2] Articles of Incorporation were issued by the Ohio Secretary of State on October 20, 2014. (Doc. 2-1, Exhibit 3).

[3] Beverly Morton's suspension letter and the revised suspension letters of Ishton Morton and Lettie Reid issued January 27, 2015 demanded that Defendants dissolve the entity they incorporated and provide proof of dissolution to the NAACP Interim General Counsel and Gill Ford.

[4] Plaintiff NAACP brought an action against Defendants in another matter for trademark infringement after Defendants in that matter incorporated an entity with the Illinois Secretary of State using the NAACP's mark. The United States District Court for the Northern District of Illinois issued a Permanent Injunction enjoining Defendants from infringing upon the NAACP's trademark and ordering Defendants to immediately dissolve the entity incorporated using the NAACP mark. *The National Association for the Advancement of Colored People v. NAACP South Side Branch and Mark Loveless,* No. 1:13cv01589 (N.D. Illinois September 19, 2013).

The NAACP is scheduled to host its 2016 National Convention in Cincinnati.  Mr. Ford testified that the NAACP has invested a substantial amount of time and money in selecting Cincinnati as its host city for the 2016 National Convention. Mr. Ford testified that Defendants' infringing acts could harm relationships the NAACP is trying to build in the Cincinnati community.  Mr. Ford also testified that Defendants solicitation of monies in the name of the NAACP from the same individuals and/or businesses that the NAACP would be seeking to sponsor the 2016 Convention could impact the NAACP's fundraising efforts.  The Court finds that Defendants' actions have the real potential to negatively affect the 2016 NAACP National Convention.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes the Court to grant preliminary injunctive relief.  A district court is to consider the following four factors when deciding to issue a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by issuance of preliminary injunctive relief.  *See Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000); *see also Mason County Med. Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir. 1977).  "[T]he four considerations applicable to preliminary injunction are factors to be balanced and not prerequisites that must be satisfied.… These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Pitcher Industries, Inc.* 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted).  The same four-part test applies to temporary restraining orders. *Kendall Holdings, Ltd. v. Eden Cryogenics LLC,* 630 F.Supp.2d 853 (S.D. Ohio 2008).

III.    ANALYSIS

    A.    Likelihood of Success on the Merits

        1.    **Trademark Infringement**

The NAACP alleges violations under two sections of the Lanham Act: (1) trademark infringement under 15 U.S.C. §1114 and (2) unfair competition under 15 U.S.C. § 1125(a).[5] To

---

[5] Under 15 U.S.C. § 1114:

(1) Any person who shall, without the consent of the registrant—

    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

Under 15 U.S.C. §1125(a):

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics,

establish liability under section 1114, the trademark registrant must show: (1) that it owns a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion. *Too, Inc. v. TJX Companies, Inc.*, 229 F.Supp.2d 825, 829 (S.D.Ohio 2002), *citing, Microsoft Corp. v. Grey Computer,* 910 F.Supp. 1077, 1086–1088 (D.Md. 1995).

Section 1125(a) establishes liability for other aspects of unfair competition, such as infringement of unregistered marks and false descriptions or representations, including false advertising. *Shonac v. Amko Int'l, Inc.*, 763 F.Supp. 919, 925 (S.D.Ohio 1991).

The touchstone of both a trademark claim under section 1114 and an unfair competition claim under section 1125 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. *Abercrombie & Fitch v. Fashion Shops of Kentucky*, 363 F.Supp.2d 952 (S.D. Ohio 2005); *citing Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997); *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996) (the same factors are considered under section 1125(a) as are considered under section 1114).

In determining whether a "likelihood of confusion" exists, this Court must consider eight factors: (1) strength of the plaintiff's mark; (2) relatedness to goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of

---

> qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

purchaser care; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of product lines. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir. 1982). These factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *PACCAR Inc. v. Telescan Technologies, L.L.C.,* 319 F.3d 243, 249-250 (6th Cir. 2003), *quoting, Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988). The ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores,* 109 F.3d at 280.

Plaintiff owns the registered trademark, NAACP. (Doc. 2-1, Exhibit 1). The NAACP mark has been in use since 1910. *Id.* Testimony by Mr. Ford establishes that the NAACP has not surrendered its mark. The mark being used by Defendants is identical to NAACP's mark, which Defendants just started using in October of 2014. Confusion is inevitable, where, as here, a defendant also uses the term "NAACP," which is identical to Plaintiff's mark. *See Dominic's Restaurant of Dayton, Inc. v. Mantia,* 2009 WL 1838282 (S.D. Ohio June 24, 2009) (granting preliminary injunction where parties used identical mark).

Mr. Ford testified that the NAACP received notification from the Cincinnati Visitor's Bureau, whom the NAACP is working with for its 2016 National Convention, expressing confusion due to a press release called by Defendant Morton, purporting to be the NAACP, Cincinnati Branch President. Defendant Morton also entered into a multi-year contract with Caesar's Entertainment through 2017 to hold a Freedom Fund Dinner, going so far as to name as the contracting party, the National Association for the Advancement of Colored People. (Plaintiff's TRO Hearing Exhibit 3). It was also discovered during a conference on this matter that Defendants were in the process of attempting to file an insurance claim under the insurance

policy belonging to NAACP unit 3175, which is the authorized, unincorporated unit of the NAACP. Mr. Ford testified that Ishton Morton, Lettie Reid, and Beverly Morton are not currently members of the NAACP, as their memberships have been suspended.

Testimony by Pamela Champion and Jennifer Branch corroborate Plaintiff's claim that Defendants' infringement of the NAACP mark has caused actual confusion. On April 23, 2015, Ms. Champion attended what she thought was a meeting of the NAACP's authorized Branch, of which she is a member. Defendant Reid presided over the meeting, representing herself as the "acting president" and distributed an agenda with the title "Cincinnati Branch NAACP General Membership Meeting." Jennifer Branch testified that her law firm received an invitation and solicitation of monies from the "NAACP Cincinnati Branch" for a Freedom Fund Dinner dated June 19, 2015. Ms. Branch testified that she attends the authorized NAACP Branch's Freedom Fund Dinners regularly but did not submit payment on this occasion because she was confused about who would be receiving the payment. The invitation received by Ms. Branch purports to be sent by the NAACP Cincinnati Branch and is signed by Ishton W. Morton as "President, NAACP Cincinnati Branch." "Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Daddy's Junk Music Stores*, 109 F.3d at 280.

### 2. Conversion

Conversion has been defined as "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps–Howard Broadcasting Co.,* 47 Ohio St.2d 224, 226, 351 N.E.2d 454 (1976), *rev'd on other grounds,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977).

Prior to Defendants' creation of Cincinnati Incorporated, the NAACP's authorized Cincinnati Branch acquired office space located at 4439 Reading Road, Suite 202, Cincinnati, Ohio. Demand has been made of Defendants to return all property belonging to the NAACP.

The NAACP's authorized Cincinnati Branch owns several bank accounts whose names include the term "NAACP" that were opened between 1961 and 2007. (Doc. 2-1, Exhibit 11). As mentioned above, Defendant Ishton W. Morton's NAACP membership was suspended on December 12, 2014 (Doc. 2-1, Exhibit 6), Defendant Lettie Reid's NAACP membership was suspended on December 19, 2014 (Doc. 2-1, Exhibit 7), and Beverly Morton's membership was suspended January 27, 2015. Despite having their memberships suspended in December of 2014 and not having their memberships reinstated any time thereafter, Defendants Ishton Morton and Lettie Reid added their names to four bank accounts belonging to the NAACP's authorized Cincinnati Branch in January of 2015. (Doc. 2-1, Exhibit 11). Mr. Ford testified that despite notice in December of 2014 to all Defendants that they were prohibited from using any property of the NAACP and its authorized Cincinnati Branch, including bank accounts and any funds contained therein, the Defendants have spent at least $30,000.00 in funds belonging to the NAACP's authorized Cincinnati Branch, that were being held in the Branch's bank accounts. (Doc. 2-1, Exhibit 12).

Plaintiff has shown a likelihood of success on the merits.

### B.     Irreparable Injury

Irreparable injury is presumed as a result of a finding of a likelihood of confusion for purposes of the Lanham Act. *Too Inc.,* 229 F. Supp.2d at 838; *Worthington Foods, Inc. v. Kellogg Co.,* 732 F.Supp. 1417, 1460 (S.D. Ohio 1990), *citing Central Benefits Mutual Ins. Co. v. Blue Cross and Blue Shield Ass'n,* 711 F.Supp. 1423, 1434 (S.D. Ohio 1989) and *Wendy's*

*Int'l, Inc. v. Big Bite, Inc.,* 576 F.Supp.816, 824 (S.D. Ohio 1983). Testimony from two witnesses established actual confusion surrounding the infringing use of the NAACP mark. There was testimony that the NAACP is the preeminent civil rights organization in the United States.

The NAACP has invested considerable time and money to hold its 2016 National Convention in Cincinnati. The planning process for the National Convention is well under way. Public confusion and the inability to access the offices and records of the Branch hinders the NAACP from reorganizing the Branch to prepare it for full participation in time for the 2016 National Convention. The NAACP solicits local sponsorships and depends on good working relationships with the community in which its National Convention is being hosted to help ensure a successful convention. Defendants' actions confuse the community and compromise the NAACP's goodwill.

From December of 2014 to March of 2015, Defendants have spent at least $30,000.00 in assets belonging to the NAACP's authorized Cincinnati Branch. At the rate of dissipating assets of $30,000.00 every four months, if permitted to remain in possession of the property of the Branch, there is a considerable threat of irreparable harm to the financial stability of the Branch once it is reorganized and returned to its active status.

Finally, Cincinnati Incorporated (the unauthorized entity) has entered into at least one multi-year contract to hold a Freedom Fund Dinner through 2017 under the name "the National Association for the Advancement of Colored People." The Defendants have called a press conference and conducted activities in the name of the NAACP. Mr. Ford testified that the NAACP is a 501(c)(3) entity and its units are 501(c)(4) entities. The Internal Revenue Service imposes guidelines that entities with these particular tax statuses must follow to maintain their

tax status.  If the Defendants are not enjoined from using the NAACP's mark, the NAACP could become vulnerable to challenges against its tax status.

Plaintiff has shown that it will suffer irreparable harm if Defendants are not enjoined.

### C. Substantial Harm to Others

No significant harm will come to third parties if this Court enjoins Defendants from infringing upon Plaintiff's mark and surrendering property belonging to the NAACP and its authorized Cincinnati Branch.

### D. Public Interest

The NAACP argues that enjoining Defendants from infringing on its mark will protect the public from confusion. Based on the testimony presented, there exists actual confusion surrounding the NAACP mark.  Therefore, the Court concludes that enjoining Defendants from infringing upon Plaintiff's mark would serve the public interest in this case.

## IV. CONCLUSION

The factors to consider in granting a Temporary Restraining Order weigh in Plaintiff's favor.  Accordingly, this Court **GRANTS** Plaintiff's Motion for Temporary Restraining Order. (Doc. 2).

**IT IS ORDERED,** that pursuant to Federal Rule of Civil Procedure 65(d)(2), Defendants, any of Defendants' officers, agents, servants, employees and attorneys, and any other persons who are in active concert or participation with anyone listed, are **ENJOINED** from:

(1) Using Plaintiff's "National Association for the Advancement of Colored People" and "NAACP" trademarks, alone or in combination with any other mark, term, symbol,

designation or design, or any term that is confusingly similar to Plaintiff's trademarks, including, but not limited to, use of "NAACP, Cincinnati Branch"; and

(2) Causing a likelihood of confusion with regard to the origin, sponsorship, affiliation, approval, connection of Defendants' products and services with the products and services of the NAACP; and

(3) Using, converting for use, dissipating, altering, destroying property belonging to the NAACP, Cincinnati Branch and making claims against any policies of, the NAACP and/or NAACP, Cincinnati Branch.

**IT IS FURTHER ORDERED** that Defendants, any of Defendants' officers, agents, servants, employees and attorneys, and any other persons who are in active concert or participation with any of them, who is or might be in possession of property belonging to the NAACP and/or its authorized Cincinnati branch, within three (3) business days of this Order contact Gill Ford, NAACP National Director of Unit Administration, via email at gford@naacpnet.org to make arrangements for the immediate transfer and surrender of the property.

**IT IS FURTHER ORDERED** that Plaintiff shall promptly inventory all property returned pursuant to this Order.

The Court waives any requirement for posting of security.

**IT IS SO ORDERED.**

                                      S/Susan J. Dlott_____
                                      Judge Susan J. Dlott